WEAVER *v.* EMERSON-BRANTINGHAM IMPLEMENT COMPANY.

Opinion delivered December 6, 1920.

1. CONTRACTS—NOVATION.—Parties to a written contract may, subsequent to its execution, rescind it in part or *in toto* and substitute a new oral agreement therefor.

2. COMPROMISE AND SETTLEMENT—CONSIDERATION.—The settlement of a controversy growing out of a written contract is a sufficient consideration for a verbal compromise.

Appeal from Arkansas Chancery Court, Northern District; *John M. Elliott,* Chancellor; reversed.

*Young & Elms,* for appellant.

1. The first contract was modified by the new agreement to the extent of releasing appellant from any obligation to pay the purchase price unless the machinery would meet the requirements of the guaranty. The new agreement took the place of the old one. 112 Ark. 227; *Ib.* 165; 6 R. C. L. 308; 112 Ark. 223. After a sufficient test both parties were satisfied that the machinery would not do the work it was represented to do, and the manager of appellee abandoned hope of ever getting it to do the work satisfactorily. The testimony shows that the machinery was given a fair test, and it failed to meet the conditions required before appellant was under any obligation to accept.

2. There was no acceptance by appellant as the testimony fully shows.

3. The great preponderance of the evidence is for the appellant. The defenses of appellant were fully sustained and call for a reversal.

*John L. Ingram,* for appellee.

1. A mere agreement to rescind a contract performed on one side, either by substitution, modification, waiver or cancellation, would be without consideration and void. 14 Mich. 266; 41 Miss. 197; 75 Ala. 452; 50 N. J. Eq. 500; 104 Iowa 487; 76 Minn. 183; 9 Cyc. 593; Clark on Cont. 698.

2. The original contract was complete, and expressly stated that the machinery was not warranted but was second-hand, and no matter what the letters and telegrams said, nor whether they constituted a modification or rescission, there was no consideration for it, and appellant had never agreed to do anything more than he had already agreed to do, and which he was bound to do under the original contract.

3. Appellant accepted the machinery, and it was delivered to him. Appellee fulfilled his part of the contract. The shipment was made according to appellant's directions and was delivered and accepted. No fraud is charged and no rescission asked, and the decree is right.

HUMPHREYS, J. Appellee instituted suit against appellant in the Arkansas Chancery Court, Northern District, to recover $800 and interest, the alleged purchase price of a tractor and engine and to foreclose a vendor's lien for said sum on said machinery. It was alleged that the machinery was shipped by appellee to appellant as provided for in the following written contract:

"ORDER FOR SECOND-HAND MACHINERY.

"Stuttgart, Ark., January 14, 1916.

"Emerson-Brantingham Implement Co. (Inc.), Rockford, Illinois:

"You will please ship for the undersigned purchasers at Stuttgart, Ark., in care of yourselves, at Stutt-

gart, Ark., by the route you think best and cheapest, if possible, on or about as soon as possible, the following described second-hand machinery. One Model L tractor No. 20019. Also one No. 12 Engine triple gang plow.

"In consideration whereof the undersigned agrees to receive the same on its arrival, pay freight and charges thereon from Charleston, Mo., and also agrees to pay to your order at the time and place of delivery, the sum of eight hundred dollars and other chattels, said cash and notes as follows: $200 cash on delivery, 1916. Note for $300 due May 1, 1916. Note for $300 due December 1, 1916. Notes to be payable to the order of Emerson-Brantingham Implement Company, and its blanks shall be used and made payable at First National Bank in Stuttgart, Ark. Said notes to bear the highest legal rate of interest from date until maturity, and the highest legal rate of interest from maturity until paid. The title to the above machinery shall remain in Emerson-Brantingham Implement Company until complete settlement is made, provided for herein, and until cash is paid in full or notes and mortgages are executed and delivered and mortgages placed upon record. Said notes are to be accompanied by approved security and a first mortgage on the above named machinery and on the following other property, towit:

"As a condition hereof, it is fully understood and agreed that said machinery is purchased as second-hand, must be settled for at the time and place of delivery and is not warranted either as to condition, size or rating, or in any manner whatsoever; that the rated horsepower of engine herein ordered (if any) is merely presumed and not known, and no verbal promise or agreement shall be valid as against or in addition to any of the conditions herein specified.

"Emerson-Brantingham Implement Company assumes no liability for nonshipment, delay in shipment or transportation, and acceptance by purchaser is a full waiver of any claim for delays in filling this order, aris-

ing from any cause. And, failing to receive said machinery or to pay said money or to execute and deliver said notes, this order shall stand as the purchaser's written obligation, and have the same force and effect as notes for all sums not paid in cash.

"Upon default in payment at its maturity of any part of the purchase price stipulated in this order, the whole amount of the purchase price shall thereupon at the option of said company, without notice, become due and payable.

"This order is taken subject to approval by the company at Rockford, Illinois, or by its branch house manager for the territory in which this order is given, and notice of such approval and acceptance is hereby expressly waived by the purchaser, Stuttgart, Ark.

"C. A. Weaver."

Appellant filed answer, denying the indebtedness and alleging that the contract was not to become effective until it was satisfactorily demonstrated upon the farm of appellant that the machinery in question would plow four to six inches deep under fair conditions; that the machinery was shipped to appellee's order, and, when it reached Stuttgart, a controversy arose between appellant and appellee concerning the necessity for a demonstration; that, in settlement of the controversy, a subsequent modified agreement was entered into between appellant and appellee to the effect that $200 should be deposited in the First National Bank of Stuttgart by appellant, together with his two promissory notes in the sum of $300 each, secured by a chattel mortgage upon the machinery aforesaid to be delivered to appellee when appellee demonstrated upon appellant's farm that the machinery would plow four to six inches deep under fair conditions; that thereupon appellant paid the freight charges on the machinery with the understanding that it would be refunded if the machinery failed to perform the work; that a test was made and the machinery failed to work satisfactorily or pull the plows

at the depth agreed upon; that, after the test, appellant refused to accept the machinery and demanded a refund of $65.10, with interest at six per cent. per annum from February 28, 1916, on account of freight advanced and oil and gasoline furnished to make the test, for which amount he prayed judgment, as well as a dismissal of appellee's bill for want of equity.

Appellee filed a reply to the answer and cross-bill, denying that it entered into any subsequent contract or agreement warranting the machinery to do the work specified in the answer and cross-bill, and alleging that the original contract made the basis of this suit was the only contract entered into by it with appellant.

The cause was submitted to the court upon the pleadings, the original written contract, certain telegrams, letters and oral evidence, which resulted in a finding that appellant was bound by the original written contract; that, in compliance therewith, appellee shipped the machinery to Stuttgart, Arkansas, and that same was accepted by appellant; that appellant had failed to pay the purchase price agreed upon for the machinery and was indebted to appellee in the sum of $992, including interest to that date; that appellee was entitled to a vendor's lien on the machinery. The court rendered a decree in accordance with the finding, from which an appeal has been duly prosecuted to this court.

The facts are that appellee had a second-hand tractor and gang plow at Charleston, Missouri, and, through its agent, George A. Mattingly, negotiated a sale thereof to appellant, who signed the order for it, heretofore set out in this opinion, on January 14, 1916. The machinery was shipped to Stuttgart by appellee to itself, and the unexecuted notes and chattel mortgage upon the machinery were sent to the First National Bank in Stuttgart, with bill of lading attached, to be delivered to appellant upon the payment of $200 in cash and the execution of the notes and mortgage aforesaid and delivery of same to said bank for appellee. Appellant claimed that he

was not to make the cash payment and execute the notes and mortgage until appellee demonstrated on his farm that the machinery would satisfactorily plow to the depth of four to six inches, and refused to execute the papers, make the cash payment or advance the freight until such test was made. The First National Bank of Stuttgart conveyed this information to appellee. Appellee thereupon wired George A. Mattingly, who negotiated the original sale, as follows: "If Weaver will put money and settlement in bank to our order subject to plowing four to six inches deep under fair conditions accept, otherwise use your best judgment." On the following day, appellee wired the bank as follows: "Wired Mattingly, our agent, yesterday. He will arrange equitably." These telegrams were shown appellant, and Mattingly agreed that appellee would demonstrate upon appellant's farm that the tractor and plows would plow satisfactorily to a depth of four to six inches if he, appellant, would advance the freight upon the machinery, amounting to $57.60, the expenses of oil and gasoline necessary for the demonstration, amounting to $7.50, deposit $200 in cash in the bank and execute the notes and mortgage and place same in the bank to be delivered to appellee if the demonstration established that the machinery would do the work aforesaid. In furtherance of the agreement, George A. Mattingly wrote and signed the following statement across the telegram received by him from appellees: "Subject to refund of freight charges in case tractor is not taken," and signed the following statement on the telegram sent by appellee to the First National Bank of Stuttgart: "Cash and papers to be held by the First National Bank until tractor is accepted by C. A. Weaver. If tractor is not accepted, C. A. Weaver to be reimbursed for freight charges advanced." Under the agreement that appellant should not be required to accept the machinery unless the test established that it would plow satisfactorily four to six inches deep, he placed the required settlement in the bank, paid

the freight charges upon the machinery and it was removed to his farm for the test. The first test was made early in March and proved a failure. Later in the same month, a test was made by George A. Mattingly in the presence of appellant, J. W. Kinross, the manager of appellee, and others. It took an entire afternoon to plow one round on a fifteen-acre tract. The next morning another attempt was made, and it took the whole forenoon to plow another round. The engine failed to pull the plows at the depth agreed, and the manager stated that his conscience would not permit him to ask appellant to pay for a tractor that was not doing better work, or coming nearer filling the guaranty, than this one was. The manager, Mr. Kinross, then tried to get appellant to wait and give them further time to make the test. Appellant refused to do so and purchased another tractor which gave satisfaction.

Appellant contends that the first contract was modified by the new agreement to the extent of releasing him from any obligation to pay the purchase price on the machinery unless on test it would meet the requirements of the guaranty to the effect that it would plow four to six inches deep in a satisfactory manner. This court is committed to the doctrine that parties to a written contract may, subsequent to its execution, orally rescind it in part or *in toto* and substitute a new oral agreement therefor. *Ozark & Cherokee Cent. Ry. Co.* v. *Ferguson,* 92 Ark. 254; *Murray* v. *Miller,* 112 Ark. 227; R. C. L., vol. 6, p. 308. Appellee insists, however, that there was no consideration for such new agreement, and that the subsequent agreement, if made, therefore did not release appellant from his undertaking in the original contract. Appellant had refused in good faith to accept the machinery from the carrier until it was established on test that it would plow four to six inches in a satisfactory manner. In order to induce appellant to advance the freight, deposit $200 in cash in the bank and execute the notes and mortgage and deposit same in the bank, it

authorized its agent to guarantee upon test that the machinery would plow from four to six inches in a satisfactory manner. This was a compromise of the controversy existing between the parties as to whether the original contract was induced by the promise to demonstrate on appellant's farm that the machinery would do this work. The settlement of this difference between the parties in this manner was sufficient consideration to support the new agreement. *Capitol Food Co. v. Mode & Clayton,* 112 Ark. 165. The court was therefore in error in rendering a judgment against appellant in any sum, but should have rendered judgment against appellee in favor of appellant for $65.10, on account of freight advanced and oil and gasoline furnished to make the test.

For the error indicated, the decree is reversed and judgment will be entered here in favor of appellant against appellee in the sum of $65.10 with interest at the rate of six per cent. per annum from February 28, 1916, to this date.