W. Y. BRANSFORD & SON v. SMITH & WHITNEY.

Opinion delivered March 7, 1921.

1. APPEAL AND ERROR—REVIEW OF DIRECTED VERDICT.—In reviewing an order directing a verdict for plaintiff, the appellate court should accept as true defendant's evidence.

2. COMPROMISE AND SETTLEMENT — CONCLUSIVENESS.—Where the seller of a pump denied responsibility for its failure to answer the buyer's purpose, and refused to install new parts at the buyer's expense, and the buyer authorized the seller to purchase and install such parts, the seller is entitled to recover, regardless of the rights of the parties under the original contract, as the service sued for was rendered under a new contract and a promise to pay.

Appeal from Lonoke Circuit Court; *George W. Clark,* Judge; affirmed.

*J. B. Reed* and *Carmichael & Brooks,* for appellants.

1. The court did not have jurisdiction, as there was no proper affidavit for appeal; the style of the court is not given; the venue is not shown and there is no *jurat;* nor is the title of the officer taking the oath shown. From the record it can not be known whether E. A. Henry is a

notary public, a justice of the peace or a clerk, nor in what State he is exercising authority, and the circuit court had no jurisdiction on appeal.  33 Ark. 747.  The affidavit is fatally defective, and there was no jurisdiction in the circuit court.  60 Ark. 524.

2.  The testimony was in conflict, and the case should have been submitted to a jury, and it was error to direct a verdict.  It is too well settled to cite authorities, that where there is a conflict in the testimony it is error to direct a verdict, but the case is one for a jury.

*Rogers, Barber & Henry,* for appellees.

1.  It is too late to raise the question of a defective affidavit for the first time on appeal to the Supreme Court.  Failure to raise the question in the lower court is a waiver.  95 Ark. 148; 59 *Id.* 177; 225 Mo. 116; 135 Am. St. Rep. 566; 35 Ark. 212.  Affidavits are amendable in the circuit court on appeal.  33 Ark. 745; 60 *Id.* 524; 67 *Id.* 524.  The authorities cited by appellants are to the same effect.

2.  Here there is no dispute as to the facts, and no conflict in the evidence.  The court properly directed a verdict.  The letters and telegrams furnish the basis for this suit, and they are not disputed, and the correctness of the charges as sworn to is not disputed.  There was nothing for a jury to pass upon.

SMITH, J.  Appellees sued to recover the purchase price of certain parts of a pump and for the cost of their installation.  Appellants answered and denied that they were indebted in any sum, and alleged that they had bought a pump from appellees for $720, and that said pump was to be complete and was guaranteed to do certain work, and that the sum sued for was the amount which was expended in putting the pump in working condition.  The court directed a verdict in favor of appellees, and this appeal is from that judgment.

The contract under which the pump was sold was in writing, but was not offered in evidence at the trial.  The

bill rendered when the pump was shipped on June 13, 1918, was for "one Rees Roturbo Pump, good for 200 GPM against 120 feet direct." It is not questioned that the pump met this specification, but it is insisted by appellants that a member of appellees' firm saw the conditions under which the pump was to operate, and stated that he was an engineer, and that the pump which he proposed to furnish would answer appellants' purposes. In view of the fact that a verdict was directed against appellants, we must assume that the jury would have accepted that version of the sale, although appellees say they did not know the actual head against which the pump was to operate was 137 feet, and not 120 feet, until Mr. Connor, their erecting engineer, undertook its installation.

The pump did not do the work, and appellants reported that fact to appellees, who took the position that they were not responsible for this failure. In a letter dated September 2 appellees wrote as follows: "You understand that we are not responsible for the fact that this pump does not handle your actual conditions, but it was made for 120-foot, instead of 137-foot, head. What we want is your authority to order the parts from the factory at your expense to make the pump fit your conditions."

Again, in a letter dated September 6 appellees said: "Your letter of the 4th regarding the head which your pump will have to work against, will say that from the ground to the top of the tank is 91 feet, from the pump to the level of the ground is 18 feet, from the pump to the water is 17 feet, and the friction amounts to 8 feet total left. We can not make a pump which will fit the conditions which we figured on and the conditions which you actually have."

Under date of September 16 appellants wrote: "If you will refer to our letter of the 4th you will note that we said this pump is useless to us unless it fulfilled our requirements, and that it would be necessary to have the

additional parts you suggest. We intended this as authority to order same, and will be glad if you will have them come at once or at earliest possible moment. We have suffered considerable inconvenience already by reason of the delay. Kindly see that this impeller comes as soon as possible.''

Other letters passed between the parties relating to the time of the installation of the impeller, and the correspondence and negotiations were closed by two telegrams. On January 13, appellees wired: ''Shall we send our Mr. Connor to erect your pump? Wire answer.'' On January 14 appellants answered by wire: ''Yes, send some one to complete erection of pump.''

This correspondence is subject to no other interpretation than that appellees had taken the position that they had delivered the pump contracted for, and were not responsible for its failure to answer appellants' purposes, and were unwilling to furnish any new parts or to install them except at appellants' expense.

Appellees may, or may not, have been right in this position, and we must, and do, assume the jury would have found against them. But they had taken that position, and were standing on it, and with this knowledge appellants gave the order for the parts and for the work covered by the account sued on. Appellants can not escape liability by showing that appellees should have rendered this service under the original contract of sale. Appellees denied they were under this duty, and the service sued for was in fact rendered under a new contract and a promise to pay, and the liability thus assumed must be enforced.

In the article on Contracts in 6 R. C. L., page 662, it is said: ''The fact that the promisor is mistaken in regard to his liability is immaterial. If there is a doubtful claim, the courts will not investigate into the relative merits or demerits of the claims of the parties. It is not a defense that the claim could not have been maintained if suit or action had been brought upon it, or that

the parties were mistaken as to the law; for, if it is, it would follow that a contract by the parties settling their own disputes would at last be made to stand or fall according to the opinion of the court as to how the law would have determined it.  If the compromise of the parties is made to depend on the question whether the parties have so settled the dispute as the law would have done, then it may be truly said that a compromise is an unavailing, idle act which questions even the power of the parties to bind themselves."  See, also, *Weaver.* v. *Emerson-Brantingham Implement Co.,* 146 Ark. 379.

The judgment was therefore properly directed in appellees' favor, and that judgment is affirmed.