GARRETT et al. v. KEISTER et al.
No. 5237.

Court of Appeals of the District of Columbia.
Argued Nov. 9, 1931.

Decided Jan. 18, 1932.
Rehearing Denied March 12, 1932.

Joseph A. Burkart and Henry I. Quinn, both of Washington, D. C., for appellants.

James P. Donovan and Harlan Wood, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

This is an appeal from a decree of the Supreme Court of the District of Columbia, dismissing appellants' bill of complaint, and declaring appellee, William Keister, to be the owner of certain funds at the Perpetual Building Association and the Federal-American National Bank.

Appellants (plaintiffs below) are administrators c. t. a. of the estate of Catherine Keister, and appellee William Keister is a son of Catherine Keister. The Perpetual Building Association was made a party defendant in the case below.

On or prior to May 24, 1923, Catherine Keister had money on deposit in series No. 31 and series No. 43 at the Perpetual Building Association, and on or about that date she requested one J. W. Hawley to witness her signing by her mark a declaration with reference to the money on deposit in series No. 31. The effect of the declaration was to make the account a joint one between herself and her son, William Keister. Some time prior to March 6, 1925, a similar declaration was signed for the money in series No. 43. Each of the declarations was also signed by William Keister. Each declaration stated that the account was to be "theirs as joint owners, subject to the order of either, and balance at death of either to the survivor." The first declaration was delivered to the association by Catherine Keister and the other was delivered by William Keister. At times William Keister had the passbooks in his possession and exercised acts of ownership over them, and he had them at the time of his mother's death and delivered them to appellants.

Catherine Keister was eighty-seven years of age at the time of her death on May 8, 1925. She could not write, but she could read printed matter. William Keister had assisted his mother in transacting her busi-

ness affairs for a number of years and he had been in the habit of indorsing his mother's name on the back of checks made payable to her and had deposited them to her account in the Perpetual Building Association. It appears that he did not deposit any of his own funds in the building association, nor did he draw any out for himself, but he did draw money for his mother.

Catherine Keister, by deed dated February 24, 1925, conveyed premises known as 1010 Spring Road Northwest Washington, D. C., to I. D. Windstead, the consideration stated in the contract was $700 cash and a secured deferred purchase money note of $7,300 payable in monthly installments of $70 each. By deed of trust of the same date, I. D. Windstead secured the note which was made payable to the order of William Keister. The deed and deed of trust were duly acknowledged, and together with the note were handed to one Lowther, the real estate agent, for the purpose of recording the deed and deed of trust, and of finally concluding the transaction. This was on March 17, 1925.

The evidence disclosed that Catherine Keister, between the date of the contract for the sale of 1010 Spring road and the date of her death, was continuously urging the appellee to get the sale settled as she wanted the $70 per month to take care of her bills.

A decree was passed dismissing the bill of complaint with costs and further adjudging that the funds on deposit at the building association survived to and became the property of the appellee, William Keister, and that the money derived from the deed of trust and placed in escrow and the deficiency claim resulting from the sale of premises No. 1010 Spring road were the property of the appellee.

Two questions are presented by this appeal: (1) Did the declaration of joint ownership in the accounts at the Perpetual Building Association constitute a valid and completed gift? (2) Did the making of the deferred purchase note payable to appellee William Keister, as payee, without his knowledge and without actual manual delivery to him during his mother's lifetime, constitute a valid and completed gift?

■■ There is nothing novel in the establishment of joint bank accounts or joint tenancies in specific funds. In the present case, while appellants' petition contains allegations of fraud and of undue influence, there is no evidence to support the averments. The mother and the son had resided together for

many years. The mother was old, and, as the record discloses, somewhat illiterate. The son attended to the transaction of her business. There was nothing strange or out of place in connection with the execution of the contracts creating a joint tenancy in the building and loan funds. Nor does the evidence disclose that this was abused by the son. It appears that, while at times he carried the books and looked after the deposit of funds, he never drew any out on his own personal account. Under circumstances of this character, the burden of proof is on the one assailing the validity of the transaction. As was said in the case of Towson v. Moore, 173 U. S. 17, 19 S. Ct. 332, 334, 43 L. Ed. 597: "In the case of a child's gift of its property to a parent, the circumstances attending the transaction should be vigilantly and carefully scrutinized by the court, in order to ascertain whether there has been undue influence in procuring it. But it cannot be deemed prima facie void. The presumption is in favor of its validity, and, in order to set it aside, the court must be satisfied that it was not the voluntary act of the donor. The same rule as to the burden of proof applies with equal, if not greater, force to the case of a gift from a parent to a child, even if the effect of the gift is to confer upon a child, with whom the parent makes his home and is in peculiarly close relations, a larger share of the parent's estate than will be received by other children or grandchildren."

■■ It is elementary that a joint tenancy may exist in personalty as well as in realty, and that a survivorship may exist in a bank account or in a special account where such is stipulated in the agreement of the parties. In Metropolitan Savings Bank v. Murphy, Administrator, 82 Md. 314, 33 A. 640, 641, 31 L. R. A. 454, 51 Am. St. Rep. 473, a husband deposited money in a savings bank in the names of himself and his wife subject to the order of either, the balance at the death of either to belong to the survivor. The husband drew nothing from the account. On his death the bank paid the balance to his wife and it was held that the administrator of the husband's estate had no claim against this fund. Considering the validity of such a contract the court said: "It is neither the object of the law nor the duty of the court to seek by narrow and technical construction the means of invalidating a contract clearly expressive of the intention of the contracting parties, and we think nothing could be clearer than the object and intention of the par-

ties to the contract in the language employed by them in opening the joint account. * * * The parties were sui juris, capable of contracting, and, having actually contracted, the law exacts fulfillment, which the appellant [the bank] has done. And we do not think, after it has fully executed its part of the contract, it ought now to be required to pay to the appellees the money which it promised to pay, and had already paid to appellants' testatrix, unless some legal requirement can be established demanding its payment to the appellees."

In the present case, while it is true that the mother, because of her inability to write, signed her name by her mark, she was nevertheless sui juris and capable of transacting business and understanding the nature of the contract into which she was entering, and, in the absence of evidence of fraud, undue influence, or coercion, the contract, which was a legal one, should be upheld.

The making of the deferred purchase-money note and the deed of trust secured on premises 1010 Spring road payable to appellee William Keister involves the question as to whether or not this amounted to a completed gift. It appears that Lowther, the agent of Catherine Keister in the sale of the property, instead of turning the settlement over to a title company, conducted it himself. In other words, in the preparation of the deed, note, and deed of trust, he acted for all the parties concerned.

Catherine Keister acknowledged the deed conveying the property on March 17, 1925, and delivered it to Lowther. The deed was acknowledged before the same notary public who had taken the acknowledgement of the deed of trust. He informed her of the contents of the various instruments and especially of the fact that the deed of trust and the note were made payable to her son, William Keister, to which she replied: "This is in accordance with my wishes." The papers were left with Lowther, who caused the deed of trust and the deed to be recorded on the 7th day of May, the day previous to the death of Catherine Keister. Lowther still retained the note, due to some delay in getting the certificate of title. He went to Florida and later sent a statement of final settlement together with the note and the balance due on the cash payment to appellee, William Keister, who turned the note and the money over to the administrators under an escrow agreement. It was not until this time, or shortly before, that he had learned that the note and deed of trust had been made in his name.

It is contended that Lowther was merely the agent of Catherine Keister to deliver the note, and that, inasmuch as she died before the note was delivered, the agency ceased and the gift was not completed. We do not agree with this contention. Delivery directly to a donee is not always essential to the completion of a gift. Delivery to a third person as agent or trustee for the use of the donee and under circumstances which indicate that the donor relinquishes control over the property will vest title in the donee quite as effectually as by manual delivery. Tucker v. Tucker, 138 Iowa, 344, 116 N. W. 119.

Let us consider the circumstances under which this transaction was carried out. Appellee had been living with his mother, transacting her business, indorsing checks for her, and attending to her banking business. Indeed, the closest fiduciary relation existed between them. When she executed the deed and was advised that the note and trust deed had been made in favor of the son, which she approved, she left with Lowther, her agent, the deed of trust, the deed, and the note. As agent and trustee of the respective parties to the transaction, it became the duty of Lowther, not only to carry out the wishes of Catherine Keister, but to record the deeds and deliver the note to the appellee.

We are unable to distinguish this case from Conlon v. Turley, 56 App. D. C. 95, 10 F.(2d) 890, 891. In that case one Rudden deposited in the Columbia National Bank $10,500 in Victory bonds, instructing the cashier to place the bonds in safe-keeping for his daughter, Margaret V. Turley. The cashier gave Rudden a receipt for the bonds. Rudden retained the receipt in his strong box. At one time he directed his clerk to give the receipt to Margaret Turley. Mrs. Turley returned the receipt to the box, where it remained. Rudden thereafter went to the bank, where he had the coupons clipped from the bonds and deposited to his credit. The receipt remained in the box until after Rudden's death. It was contended in that case that, inasmuch as the bonds had never been delivered to Margaret Turley, the gift had never been completed. This court, speaking through Mr. Chief Justice Martin, said:

"We agree with the decree of the lower court. It is, of course, elementary that in order to constitute a valid gift of property inter vivos there must in general be an actual delivery thereof to the donee, with an intention upon the part of the donor to divest himself of the title, dominion, and control over the subject of the gift, and to in-

vest the donee therewith. Lee v. Lee, 5 F.(2d) 767, 55 App. D. C. 344; Lust v. Miller, Custodian, 4 F.(2d) 293, 55 App. D. C. 217; 28 Corpus Juris, p. 626; Allen-West Co. v. Grumbles, 129 F. 287, 63 C. C. A. 401. Nevertheless, 'delivery of the property to a third person as agent or trustee for the use of the donee, and not as agent of the donor, under such circumstances as indicate that the donor relinquishes all dominion and control over the property, is a sufficient delivery to complete the gift, which in such case is not revoked by the subsequent death of the donor before the property has been actually delivered to the donee. * * * Knowledge of the gift on the donee's part is not necessary to render it effective, since the assent of the donee may be implied.' 28 Corpus Juris, p. 640, § 32; 12 R. C. L. p. 934; Martin v. Funk, Adm'r, 75 N. Y. 134, 31 Am. Rep. 446.

"The gift now in question responds to the foregoing conditions. The donor unconditionally parted with the possession of the bonds by delivering them to the bank as bailee for the donee alone, and accepted a receipt from the bank to that effect."

■ We think the character of trusteeship which was found to exist in the bank is not different from that reposed in Lowther, and the fact that the note in the present case was not delivered until after the death of Catherine Keister is not material. The receipt and bonds were not delivered in the Conlon Case until after the death of Rudden. Neither is the fact that she, during her life, was to receive the deferred payments of $70 per month, secured by the note and deed of trust, controlling. This exercise of control over the corpus of the gift was not different from that exercised by Rudden in clipping the coupons from the bonds and depositing them in his own account.

The decree of the lower court is affirmed, with costs.