## MAGRUDER v. NATIONAL METROPOLI-TAN BANK OF WASHINGTON.

### No. 238.

Municipal Court of Appeals for the
District of Columbia.

Jan. 24, 1945.

Samuel W. McCart, of Washington, D.
C., for appellant.

Justin L. Edgerton, of Washington, D.
C., (Frank F. Nesbit, of Washington, D. C.,
on the brief), for appellee.

Before CAYTON and HOOD, Associate
Judges.[1]

HOOD, Associate Judge.

Action was brought below against the
Bank and its trust officer, Stanley D. Wil-
lis, for $1,517, the cash value of certain
United States bonds having a face value
of $1,850. Due to Mr. Willis' death prior
to entry of judgment, he is no longer a
party to the action.

The Bank was appointed executor of the
estate of Howe Totten, who died domiciled
in the State of Maryland. After its ap-
pointment, Mr. Willis, Mr. Gordon, an at-
torney representing the estate, and a
daughter of the decedent, went to a Mary-
land bank and opened a safe deposit box
maintained there by decedent in his in-
dividual name and took possession of the
contents. Among the contents were the
following: Three savings account books
showing deposits in Maryland banks of a
total of $2,608.78 in the names of decedent
and plaintiff as joint owners, subject to
their joint order, with balance at the death
of either to belong to the survivor. A
certificate of title to an automobile truck,
registered in the name of plaintiff and
bearing an assignment to decedent which
assignment was neither acknowledged nor
dated. A deed for certain real estate in
the District of Columbia executed by plain-
tiff but not acknowledged by her, and with

---

[1] Two judges of this court constitute a quorum. Act of April 1, 1942, Code 1940, § 11—771.

no named grantee. United States Savings bonds of a total face value of $1,850 registered in the names of plaintiff or decedent.

Shortly thereafter there was a conference at Mr. Willis' office between him, Mr. Gordon and the plaintiff. At this conference plaintiff disclaimed any interest in the automobile and at the request of Mr. Willis acknowledged her signature to the assignment of the certificate of title. Plaintiff also disclaimed any interest in the District of Columbia real estate and upon the request of Mr. Willis aqknowledged her signature to the deed thereof.

Likewise at the conference plaintiff endorsed the United States Savings bonds which were thereafter transmitted by Mr. Willis to the Treasury Department for redemption. A few days later plaintiff received from the Treasury Department a draft for $1,517 which she took to the office of Mr. Willis and there endorsed and left it with him. At the same time, Mr. Willis delivered to her the three savings account books and she thereafter withdrew the deposits.

Plaintiff's claim is that she inadvertently left the endorsed Treasury draft with Mr. Willis, that the proceeds thereof were her property and that the bank wrongfully refused to pay the same to her. The position of the Bank is that as executor it was in doubt as to the respective rights of the estate and the plaintiff in the bonds and savings account deposits and that a settlement agreement was reached between it and the plaintiff by which she paid over to it the proceeds of the bonds and relinquished all rights therein, and it in turn surrendered to her the savings account books and relinquished all its claims and rights in the savings account deposits.

The case below was tried in a rather unusual manner. No testimony was taken, but by agreement the written statements of the plaintiff, Mr. Willis and Mr. Gordon, containing the testimony which they would have given if called upon to testify, were received in evidence. These statements together with a stipulation and certain exhibits constituted the entire evidence in the case.

The accounts of the three individuals as to what took place on the two occasions when the plaintiff was in Mr. Willis' office are directly conflicting. The plaintiff says that on the first occasion she signed the bonds for redemption at the request of Mr. Willis but that nothing was said concerning any claim of the estate to the bonds or their proceeds; that on the second occasion when she took the Treasury draft to Mr. Willis' office, he requested that she endorse it and she did so but left it on his desk only by inadvertence; that after receiving the bank books from Mr. Willis and signing a receipt for them she left his office without realizing that she had left the check on his desk; that within a very short time she went back to his office and asked for the check and then for the first time did she learn that the executor made claim to it.

According to Mr. Willis' statement he discussed with plaintiff at the conference the matter of title to the automobile, the District of Columbia real estate, and the savings accounts as well as the question of the bonds; that she asserted no claim to the automobile, the real estate or the bonds but did claim ownership of the savings accounts; that he told her if she would surrender to the executor the proceeds of the bonds he would deliver to her the savings account passbooks so as to permit her to receive the proceeds thereof; that she thereupon endorsed the bonds for redemption and he told her they would be mailed to the Treasury by him but that the draft would be mailed by the Treasury Department to her and if, upon her receipt of the draft, she would bring it to his office and endorse it he would in turn deliver to her the savings account books; that thereafter she brought the Treasury draft to him, endorsed and delivered it to him and he in turn delivered the savings account books to her; that she left his office and returned some thirty minutes later and asked if she was not also entitled to receive the Treasury draft for $1,517, that he explained to her that the arrangement was that the estate receive the proceeds of the bonds and she receive undisputed possession of the savings account books; that she left his office and he did not hear anything further from her for approximately one year.

According to Mr. Gordon's statement, the plaintiff at the conference stated that the automobile was the property of Mr. Totten and she made no claim to it, that the real estate belonged to Mr. Totten and she likewise made no claim to it, and she completed the assignment of title and acknowledgment of the deed; that the question of the bank books and the Govern-

ment bonds was then taken up; that she was shown a receipt indicating that she had previously during the lifetime of Mr. Totten received from him Government bonds of a face value of $1,850, and she stated that the bonds remaining in the box belonged to Mr. Totten, but that the bank accounts belonged to her; that he and Mr. Willis informed her that they would surrender the bank books to her if she would co-operate in obtaining redemption of the bonds and surrender of the proceeds to the estate.

It appears undisputed that Mr. Totten had purchased with his own money United States Government bonds of a face value of $4,200, that all the bonds were registered in the names of himself or plaintiff; that during his lifetime Mr. Totten had redeemed bonds of the face amount of $500, leaving bonds in the amount of $3,700, and that thereafter one-half of that amount had been delivered by him to the plaintiff, leaving an equal amount in the safe deposit box. It also appears to be undisputed that all deposits in the savings accounts were made by Mr. Totten from his own individual funds.

The trial court found that the accounts of the transaction given by Mr. Willis and Mr. Gordon represented the facts and that those facts showed a compromise settlement between the parties, and accordingly finding and judgment were entered in favor of the defendant.

Attacking the finding and conclusion of the trial court, plaintiff asserts that under the law both the savings account deposits and the bonds were her exclusive property, that any claim by the executor to either of them was entirely without basis in law; and that consequently there could have been no compromise and settlement because there was no consideration for such an agreement. Authorities are cited by plaintiff in support of her claim that upon the death of Mr. Totten complete and absolute title to both the bonds [2] and the savings accounts [3] passed to her.

Undoubtedly a compromise agreement, like any other agreement, requires a consideration and while there are authorities to the effect that relinquishment of an entirely baseless claim is not a sufficient consideration [4] others hold that if the controversy be actual and in good faith, it is the proper subject of a compromise, regardless of the real merits of the respective claims.[5] We do not understand that the claim must be one which would be sustained in the courts. The usual settlement involves the compromise of doubtful claims and though the authorities are not fully in accord as to what constitutes a doubtful claim, there seems to be general agreement that if the claim is advanced in good faith and is not obviously absurd in fact or plainly unfounded in law, its forbearance constitutes a good consideration.[6] If there is an honest and reasonable belief in the possible validity of the claim, the validity of the settlement will not depend upon what may be later determined as to the actual merits.[7] The law favors settlement of litigation and the compromise of disputed claims.[8]

In the present case the bonds were purchased by Mr. Totten, and were kept in his safe deposit box, an equal amount had previously been delivered to plaintiff, and, according to Mr. Gordon, the plaintiff stated that the bonds in the box belonged to Mr. Totten and she made no claim to them. Under these circumstances the executor cannot be said to have been plainly unreasonable in believing that the estate was entitled to make claim to the bonds or their proceeds, in spite of their registration in

[2] United States v. Dauphin Deposit Trust Co., D.C.M.D.Pa., 50 F.Supp. 73; In re Deyo's Estate, 180 Misc. 32, 42 N. Y.S.2d 379; In re Stanley's Estate, 102 Colo. 422, 80 P.2d 332; Franklin Washington Trust Co. v. Beltram, 133 N.J.Eq. 11, 29 A.2d 854. Cf. Decker v. Fowler, 199 Wash. 549, 92 P.2d 254, 131 A.L.R. 961.

[3] Taylor v. Henry, 48 Md. 550, 38 Am. Rep. 486. See, also, Gorman v. Gorman, 87 Md. 338, 39 A. 1038, and comments in Matthew v. Moncrief, 77 U.S.App.D.C. 221, 135 F.2d 645, 149 A.L.R. 856. Cf. Whalen v. Milholland, 89 Md. 199, 43 A. 45, 44 L.R.A. 208; Brewer v. Bowersox, 92 Md. 567, 48 A. 1060; Ragon v. Kelly, 180 Md. 324, 24 A.2d 289.

[4] E.g. Skinner v. Cromwell, 10 Cir., 40 F.2d 241; Williams v. Frederick's Estate, 289 Ill.App. 410, 7 N.E.2d 384; Hooff v. Paine, 172 Va. 481, 2 S.E.2d 313.

[5] E.g. W. Y. Bransford & Son v. Smith & Whitney, 147 Ark. 613, 228 S.W. 377; Barr v. Gilmour, 204 Ky. 582, 265 S.W. 6; Galusha v. Sherman, 105 Wis. 263, 81 N.W. 495, 47 L.R.A. 417.

[6] Williston, Contr. (Rev.Ed.), Sec. 135.

[7] Restatement, Contracts, Sec. 76(b).

[8] Clark v. Barlow, 74 App.D.C. 328, 122 F.2d 337, certiorari denied, 314 U.S. 675, 62 S.Ct. 188, 86 L.Ed. 540.

the names of the decedent or the plaintiff as co-owners. Perhaps the executor had less foundation for making claim to any interest in the savings account deposits, yet those deposits were made entirely from the money of the decedent and the pass books were found in his safe deposit box. A prudent executor might well hesitate before delivering the passbooks to the survivor for withdrawal of the funds. This was particularly true in view of the fact that the safe deposit box containing the passbooks and bonds also contained the title certificate to the truck and deed to the real estate which plaintiff then and now concedes to be the property of the decedent.

When the question of ownership of the bonds and deposits was first raised, plaintiff might have made claim of complete ownership of both. The executor could also have claimed on behalf of the estate a like ownership. Regardless of the relative merits of such claims, we think the situation furnished the basis for a valid compromise and settlement of the respective claims.

The plaintiff further insists that at the first conference between the parties there was no dispute as to the respective rights and consequently there could have been no compromise. To sustain this claim it would be necessary to accept plaintiff's version of what occurred and disregard the versions of Mr. Willis and Mr. Gordon. But even in plaintiff's own version there are admitted facts which tend to sustain the claim of the executor. If there was no dispute at the first conference and if plaintiff was claiming both the bonds and the bank deposits, the question immediately arises why she endorsed the bonds at Mr. Willis' request. If she claimed the bonds as her own property and the executor conceded her right, then there was no occasion for her endorsing the bonds for redemption. She could have taken the bonds and retained them or redeemed them as she saw fit. Again, after receiving the Treasury draft for the redeemed value of the bonds, if plaintiff asserted and the executor conceded her title,

there was no occasion for her returning to Mr. Willis' office with the draft. And certainly there would have been no occasion for Mr. Willis to request plaintiff to endorse the draft or for her to comply with that request. Her claim that she left the endorsed draft on Mr. Willis' desk purely by inadvertence cannot be easily accepted. A draft in such an amount, endorsed and therefore negotiable, is not likely to be left anywhere inadvertently, particularly not on the desk of one who did, or conceivably could, assert a claim to it. Plaintiff's delay for a year before again making demand on the executor is not without significance.

■ Because the case was tried below on written statements and stipulation, without the benefit of cross-examination, and without an opportunity, being afforded the trial court of hearing the witnesses testify, we have studied the record with particular care and have reached the conclusion that the trial court was correct in accepting the version of Mr. Willis and Mr. Gordon as furnishing the correct account of the transaction between the parties.

Plaintiff asserts that the executor did not act in good faith in its dealing with her but we find nothing in the record to substantiate this assertion.

■ As a final point, plaintiff says that the trial court was in error in placing the burden of proof on her. This contention is made on the basis that title to the bonds and deposits were at least prima facie in plaintiff and that the burden should be upon any one asserting an adverse claim.[9] As we have pointed out before, the present proceeding was not to determine the merits of the original claims, but instead, was to determine the existence and validity of the compromise agreement. Plaintiff having received the Treasury draft for the proceeds of the bonds took that draft to the executor, endorsed it and left it with the executor. When she later asserted a right to recover the amount of the draft from the executor, the burden was upon her to establish that right.

Affirmed.

---

[9] Cf. Garrett v. Keister, 61 App.D.C. 25, 56 F.2d 909.