# Richmond

## A. A. HOOFF AND ANNIE B. BROWN v. FRANKLIN PAINE AND HELEN PAINE.

April 10, 1939.

Record No. 2046.

Present, All the Justices.

The opinion states the case.

*Robert A. Hutchison,* for the plaintiffs in error.

*Frank L. Ball* and *John C. McCarthy,* for the defendants in error.

GREGORY, J., delivered the opinion of the court.

A. A. Hooff and Annie B. Brown, trading as Brown and Hooff, instituted action upon a negotiable note for $885.20, against Franklin Paine and Helen Paine. The defense was that no consideration existed for the note. The court sustained the defense and dismissed the action.

There is no dispute about the facts. Franklin Paine desired to erect a dwelling upon his lot and for that purpose entered into a contract with a Mr. McDonald, who as general contractor agreed to furnish all supplies and to construct the building. The plaintiffs, Brown and Hooff, were subcontractors and furnished to McDonald, the general contractor, lumber and other materials in the amount for which the note was given. These supplies were used by the general contractor in constructing the building. Paine, the owner, had nothing to do with contracting this bill and apparently did not know of it until he was called upon by Mr. Hooff. They met upon the premises and both inspected the building which was not completed at this time. Hooff informed Paine that unless he (Paine) would give Hooff a negotiable note for the amount due by the general contractor to the subcontractors, Brown and Hooff, they would file a mechanic's lien upon the property. The owners erroneously thought the subcontractors had the right to file such a lien. They, therefore, wrote a letter to the subcontractors in which they agreed to execute the note under the threat to prevent the lien being filed. At the time the note was given the owners owed the general contractor nothing and under the Virginia law, Code, section 6428, the subcontractor had no right to file a mechanic's lien.

Later, Paine, after consulting an attorney, was informed that the owner was not responsible to a material man for materials furnished a general contractor and used in a building except to the extent of the amount owed by the owner to the general contractor. About three weeks after the note had been given, Paine wrote the plaintiffs demanding the return of the note which he claimed had been given without consideration. At the time this letter was written and received, there still remained sufficient time under

the statute for the filing of a mechanic's lien by the plaintiffs.

No credit was extended to the defendants upon the faith of the note. All of the materials furnished by the subcontractor had been furnished prior to the giving to the note.

The general contractor, failed to complete the building in accordance with the contract and the owners were compelled to finish it at their own cost.

The plaintiffs at the trial introduced the note and rested. The defendants based their defense entirely upon want of consideration with the result as previously stated.

The question presented may be stated as follows: Are the owners of realty, who have had a general contractor erect a building thereon, liable upon a note given to a subcontractor for supplies which he furnished the general contractor, under the threat that if the note were not given the subcontractor would file a mechanic's lien on the property, when at the time the note was given the general contractor had abandoned the work and was due nothing by the owners, and the subcontractor had no legal right to file such a lien?

The plaintiffs take the position that the note constitutes a promise by the defendants to pay the debt of the general contractor, and being in writing it met the requirements of the statute of frauds and a consideration would be imported. This position is not tenable because the promise was not to pay the debt of another. It was a direct, unconditional and original promise of the Paines to the plaintiffs. For this reason we think the statute of frauds is not involved in this case.

We are of opinion that the note did not constitute a novation of the debt due by McDonald to the plaintiffs, because McDonald not only did not agree to a novation but actually was opposed to it, as evidenced by his direction to Paine not to make any settlement of his (McDonald's) debt with the plaintiffs. McDonald has not been released as the debtor by reason of the note.

There remains for our determination the single question of whether or not the note was founded upon a valuable con-

sideration. It is urged by counsel for the plaintiffs that they forbore the filing of a mechanic's lien and that this constitutes a sufficient consideration to support the note. The defendants answer that the plaintiff had no valid right to file a mechanic's lien, and therefore, their forbearance could not sustain a promise.

██ The law is well settled that forbearance, or the promise of forbearance, to prosecute a well-founded or doubtful claim is a sufficient consideration for a contract. On the other hand, the forbearance to prosecute an invalid, worthless or unfounded claim is not a consideration recognized by the law as valuable. 12 Am. Jur., Contracts, section 84, section 85, section 86 and section 87; 8 Cor. Jur., Bills and Notes, section 373; Elliott on Contracts, Vol. 1, section 235; *City Street Improvement Company* v. *F. E. Pearson,* 181 Cal. 640, 185 P. 962, 20 A. L. R. 1317.

In 13 Cor. Jur., "Contracts," section 197, is found this very lucid statement of the general rule: "The principle followed in perhaps the majority of cases is that one has a right to sue where his claim is reasonably doubtful, and that forbearance to enforce a claim which might reasonably be thought doubtful is a sufficient consideration, on the ground that 'the reality of the claim which is given up must be measured, not by the state of the law as it is ultimately discovered to be, but by the state of the knowledge of the person who at the time has to judge and make the concessions.' From this it is clear that, if the right is not doubtful, there is no consideration, for there is neither benefit to the promisor nor detriment to the promisee, and, therefore, forbearance or a promise to forbear to insist on a claim clearly unenforceable cannot be a consideration. This is true, for example, of a promise to forbear from claims under an illegal contract, such as a gambling contract, or one involving the commission of a crime, or one which is without consideration, or which is barred by the statute of limitations; or of the discontinuance of a vexatious lawsuit brought to harass the attorneys of an infant who have ob-

tained a final judgment against a railroad company, and to delay the collection thereof."

In Michie's Digest of Virginia and West Virginia Reports, Vol. 2, "Contracts," section 23, page 879, this statement is taken from the case of *Bank of Ohio Valley* v. *Lockwood,* 13 W. Va. 392, 427, 31 Ann. Rep. 768: "An agreement to forbear for a time proceedings at law, or in equity, to enforce a well-founded claim is a valid consideration for a promise. But this consideration fails, if it be shown, that the claim is wholly and certainly unsustainable at law or in equity. * * * ."

In *Tozier* v. *Woodworth,* 135 Me. 46, 188 A. 771, Tozier was a qualified tax collector in the town of Unity and he sought to collect taxes of Woodworth. The lien for the taxes which he endeavored to collect had expired but Woodworth thinking there was a valid lien for the taxes, orally promised to pay them. Later he discovered that the lien had expired prior to the time that he made his promise. When sued he defended upon the ground that there was no consideration for the oral promise which was the subject of the suit, and the court held that his position was correct. The holding of the court was that the tax collector's forbearance to sue to recover the pre-existing taxes did not constitute a valid consideration for the promise to pay the taxes because the collector at the time the promise was made had no cause of action against the promisor at law or in equity. The assessors' warrant to the tax collector for the tax was dated April 26, 1924, and the time to enforce the tax lien on the realty had expired under statute before the grantee promised on May 14, 1935, to pay the pre-existing taxes. Therefore, the collector's forbearance to sue did not cause the loss of the lien nor constitute good consideration for the promise.

Another late case is *Goodbody et al.* v. *Margiotti,* 323 Pa. 529, 187 A. 425, 191 A. 582, 583, in which the court speaking through Justice Stern said: "A promise to forbear the exercise of a right which does not exist cannot constitute consideration for a contract, nor for the same reason, could such forbearance give rise to a promissory estoppel."

The reports contain many interesting cases concerning forbearance as a consideration for a contract. The great weight of authority sustains the view which we have expressed.

In this case the note sued upon represented a debt which the defendants were under no obligation to pay. It was not their debt and the execution and delivery of the note did not cause any detriment to the plaintiffs. They simply agreed to waive their right to file a mechanic's lien, a right which they did not have.

The judgment of the lower court is therefore affirmed.

*Affirmed.*

SPRATLEY, J., concurs in result.

HUDGINS, J., dissenting.

I think a detailed statement of the facts is necessary to present a complete picture of the whole transaction. Franklin and Helen Paine were the owners of a lot upon which W. P. McDonald agreed to erect a building. Brown and Hooff furnished the lumber and material used in the construction of this building. On July 15, 1937, Hooff informed the owners that the general contractor owed his firm a balance of $794.74 for lumber and material. At that time the owners owed the general contractor $289 on the building contract, to be paid when the general contractor "completed the furnace job." Hooff informed the owners, or one of them, that his firm would file a mechanic's lien to secure payment of the amount due. Thereafter, on August 4, the owners wrote the subcontractor this letter:

"Brown and Hooff,
"Manassas, Virginia,

"Gentlemen:
"Having been informed that the General Contractor, W. P. McDonell, who constructed my home on Lot 33, Leewood, still owes you a balance of $794.74 for the lumber and mate-

rials furnished by Brown and Hooff and since *we desire to prevent the filing of a lien, it is hereby agreed between Brown and Hooff and Franklin and Helen Paine,* husband and wife, Route One, Springfield, Virginia, that we will execute our note, due and payable in thirty days, for the balance now due of $794.74; that we agree to pay not less than $25.00 when the thirty days expire and that in consideration of this payment you will extend the balance due for another thirty days upon the execution by us of another note due in thirty days and that as future notes become due and we make the regular $25.00 monthly payment, that you will grant an extension of thirty days on cash note until the entire sum of $794.74 plus interest at six per cent shall have been paid; that in further consideration of this settlement of your account by monthly payments of not less than $25.00 we (myself and wife) agree to execute a second mortgage to Brown and Hooff at any time that Brown and Hooff request it as security for whatever balance may then be due.

"Respectfully,

"Franklin Paine,

"Helen Paine."

The subcontractor did not require the owners to execute the mortgage mentioned in this letter but accepted their simple note in settlement of the obligation. Subsequently, an error was found in the account and a new note was given, in which the correct amount due the subcontractor was inserted. Later, this second note was curtailed by the payment of $25 and a third note, less the $25 paid, was given in renewal. Before this third note became due the owners attempted to repudiate the obligation, seemingly on two grounds: (1) Because the general contractor had failed to complete the "furnace job," and (2) because the owners at the time they executed the contract with the subcontractor did not know the provisions of the mechanics' lien statutes of Virginia.

Either or both of the reasons assigned are not sufficient to justify the makers in refusing to pay the note given to the subcontractor. Mr. Franklin Paine, one of the owners, was a graduate lawyer employed in a government department as a law clerk. Ignorance of the law, under the circumstances, is no excuse for the failure to fulfill their obligation. "The general rule is commonly said to be that a mistake of law does not affect the validity of a contract where there is no mistake of fact." 12 Am. Jur. 634. There is no mistake of fact shown in this record. The amount of the subcontractor's claim is not disputed. It was unpaid. The consideration for the debt was building material used in the construction of a building on the owners' land. At the time the contract in question was executed, the subcontractor had the right to perfect a mechanic's lien upon the land and the building.

In *Coleman* v. *Pearman,* 159 Va. 72, 165 S. E. 371, 372, we said: "Laborers and materialmen who are unwilling to extend credit to a general contractor have three courses, or methods, open to them to obtain additional security for their claims out of the funds due, or to become due, under the building contract: (1) By taking the steps prescribed by section 6429a of the Code of 1930 to fasten personal responsibility upon the owner; (2) by filing separate and independent liens under Code, section 6428; (3) by taking advantage of a lien perfected by the general contractor."

The subcontractor did not take the steps prescribed in section 6429a of the Code to fasten personal responsibility upon the owners, but they did notify the owners that it was their intention to file a separate independent lien under Code, section 6428.

Whether or not this proposed mechanic's lien would have been beneficial to the subcontractor is now a matter of speculation. It was admitted that the owners had not paid to the general contractor the sum of $289 provided for in the building contract. This sum would have become due if the general contractor had completed the work on the furnace. Just why the general contractor made default in his

obligations to the owners does not appear. The evidence simply shows that the work was not done by the general contractor, and that the owners completed the work at a cost exceeding $289.

It is to be noted that the default of the general contractor occurred *after* the owners had agreed to assume payment of the amount due the subcontractor. Frequently, subsequent events, not anticipated at the time of an agreement, render a contract of no financial benefit to one of the contracting parties, but that fact does not change the liability of the parties or convert a definite unconditional obligation into a promise without consideration.

The filing or the perfecting of a mechanic's lien is quite different from enforcing payment of the amount due thereunder. A perfected mechanic's lien is a lien upon the owners' land and building. Subsequent actions of the general contractor may render it of no value to the subcontractor, but he has a right, within the time fixed by statute, to perfect it, without the owners' consent, against the owners' property. When so perfected, whether valuable or not, such a lien is a cloud upon the owners' title and may cause them much annoyance and hardship. The value of the lien depends upon the state of accounts between the owners and the general contractor * * *. It is conceded that at the time the agreement between the owners and the subcontractor was executed, the proposed lien was worth at least $289 if the general contractor performed his undertaking. Under these circumstances the owners agreed to execute the note in question, and the subcontractor agreed to waive his rights to perfect a mechanic's lien. The subcontractor has fully performed his part of the agreement. The owners seek to evade performance on the ground that the contract itself was *nudum pactum.*

While there is no privity of contract between the owners and the subcontractor, the owners have a vital interest in the subject matter. Upon certain conditions the subcontractor may force a sale of the owners' property to satisfy his claims. Under the provision of Code, section 6429a, the

owners may be made personally liable to workmen or parties who furnish material for the building to the full amount stated in the building contract. It has been held that if the subcontractor worked upon a building relying solely upon the oral promise of the owner to pay for it, then the owner is liable. *Way* v. *Baydush,* 133 Va. 400, 112 S. E. 611. If a subcontractor threatens to move building material intended to be used in construction from the building site and the owner executes a written promise to pay the amount of his claim to prevent its removal and delay in the construction, it has been held that such consideration is ample to support an action on the written promise. *Richmond Engineering, etc., Corp.* v. *Loth,* 135 Va. 110, 115 S. E. 774.

After work is done and building material used in the construction, the owners, the workmen and the subcontractors still have an interest in the subject matter; the owner to obtain his building free of clouds upon his title, and the workmen and subcontractors to obtain pay for work and the purchase price of material furnished. The statutes give the workmen and the materialmen the right to perfect liens upon the building to secure the payment of their respective claims. If they elect to accept the written obligation of the owner in lieu of taking the necessary steps to perfect such liens, why shouldn't such an obligation be binding upon the owner? If such parties elect to take a simple note of the owner, they have no specific lien upon any property to secure the payment of their claims. If they elect to perfect a mechanic's lien, they have a specific lien upon the land and the building as security for the payment of their claims. This lien, it is true, is limited to the amount due or to become due to the general contractor.

Mechanics' liens are obligations created by statute. The execution and delivery of a note is a voluntary obligation assumed by the maker. If the owner has such an interest in the subject matter that the law compels him, under certain conditions, to recognize the claims of laborers and materialmen, why hasn't the owner a sufficient interest in

the subject matter for him to make a binding written agreement to pay such claims in order to prevent the creation of a cloud upon the title to his property?

If, after work is done or material furnished on the credit of a general contractor, the owner pays for such work or material to prevent the filing of a mechanic's lien, such owner has the right to charge the general contractor with the sums so paid. "To constitute a consideration, it is enough that something is promised, done, forborne, or suffered by the party to whom the promise is made, as consideration for the promise made to him. Where A promises B to pay him a sum of money if he will do a particular act and in consideration thereof, and B does that act, the promise thereupon becomes binding, although B at the time of the promise does not engage to do the act." 12 Am. Jur. 572, 573.

In the letter the owners wrote to the subcontractor, they expressly stated, "we desire to prevent the filing of a lien," in consideration of which "it is hereby agreed * * * that we will execute our note * * * ." The subcontractor did not file a mechanic's lien. He accepted the note as a settlement for the unpaid purchase price of lumber and building material which the general contractor used in constructing a building for the owners. The owners were not annoyed by the creation of a cloud upon their title or by a suit to enforce a mechanic's lien, the value of which, if perfected, would have been, as heretofore stated, dependent upon the condition of accounts between the owners and the general contractor. "In such case it is elementary that whether the consideration was commensurate with the promise is immaterial. If the consideration has any value whatever, it is, in such case, sufficient to support the promise and render it enforceable." *Richmond Engineering, etc., Corp.* v. *Loth, supra* [135 Va. 110, 115 S. E. 787].

A large number of construction contracts are being performed every day. Frequently controversies arise between the workmen, the subcontractor, the general contractor and the owner. If the owner, in settlement of these controversies,

promises in writing to pay the claims of laborers, material-men and subcontractors, whether before or after the work is done or the material used, he should be held to his bargain. Any other conclusion will necessarily force workmen and subcontractors to litigate their past-due claims against the owner's property, although the owner may be willing to assume full responsibility for the payment of such claims. It seems to me that there is ample consideration to support such a written obligation.

It follows that, in my opinion, the judgment of the trial court should be reversed, and a final judgment here entered on the note executed by the owners to the subcontractor.