**Richmond**

MARY P. VEILLEUX

V.

MERRILL LYNCH RELOCATION
MANAGEMENT, INC., ET AL.

December 2, 1983.

Record No. 810103.

Present: All the Justices.

*Peter K. McCrary* for appellant.

*David G. Lane; James B. Robeson (Susan Smith Blakely; Lewis, Mitchell & Moore; Robeson, Murphy, Robeson & Van Doren,* on briefs), for appellees.

THOMAS, J., delivered the opinion of the Court.

This appeal arises out of a sale of residential real property. Mary P. Veilleux was the purchaser. Merrill Lynch Relocation Management, Inc. (Merrill Lynch) was the seller. And Long & Foster Real Estate, Inc. (Long & Foster) was the broker whose agents worked on behalf of Merrill Lynch to sell the property.

After Veilleux signed a contract to purchase the house, but before the closing, she discovered the house had a leaky basement. She immediately advised agents of Long & Foster that because of the leaky basement she did not want to purchase the house. The settlement date was imminent. Long & Foster's agents urged Veilleux to attend the settlement to see what could be worked out. They assured her that Merrill Lynch was a reputable company and that the matter would be taken care of.

At the urging of Long & Foster's agents, Veilleux attended the scheduled closing. There, she reiterated her intention not to go through with the closing. After various telephone calls to Merrill Lynch, the Long & Foster agents promised Veilleux that if she settled, Merrill Lynch would repair the basement.

As a direct result of this representation, Veilleux signed the settlement papers and turned over to the closing attorney approximately $126,000.00. From the proceeds of the sale, all of which would have been turned over to Merrill Lynch, the closing attorney retained $6,009.00, which was placed in escrow to ensure that

Merrill Lynch would repair the basement to Veilleux's satisfaction.

At Merrill Lynch's direction, Long & Foster took bids on completing the repairs. Work was done on the basement but it did not stop the leak. Veilleux then contracted to have the work done by a company known to her. When she presented a bill, Merrill Lynch refused to pay.

Veilleux then sued both Merrill Lynch and Long & Foster to recover the cost of repairs, made by her, to stop the leak and to correct other, more minor problems in the house. At the close of plaintiff's case, the court, on motions by the defendants, struck all of plaintiff's evidence as to Long & Foster and dismissed Long & Foster from the case. In addition, the court struck all of plaintiff's evidence as to any oral contract between Veilleux and Merrill Lynch. The case was then submitted to the jury solely on the basis of the written sales contract. The jury returned a verdict in favor of Veilleux in the amount of $8,500.00.

Merrill Lynch's counsel moved the court to reduce the verdict. It contended that only a portion of the $8,500.00 was attributable to a breach of the written sales contract and that the excess amount was related to the alleged oral contract to repair the basement. Merrill Lynch's counsel argued that since the evidence of the existence and breach of the oral contract to repair had been stricken the court was required to strike the excess damages. The trial court agreed, reduced the damage award to $1,604.00, and entered judgment on that amount.

On appeal, Veilleux contends it was error for the trial court to strike her evidence. We are of opinion the court was correct in striking the evidence as to Long & Foster. However, the court should not have stricken the evidence against Merrill Lynch with regard to the oral promise to repair the basement and thus it follows that it was error for the court to reduce the amount of the jury verdict.

■ We will concern ourselves first with the case against Merrill Lynch. The trial court struck the evidence of an oral promise to repair the basement because it found, as a matter of law, that there was no consideration for the promise. That same ruling caused the court to reduce the verdict amount. In a letter opinion, the trial court stated the reasons for its ruling:

Counsel for plaintiff argued at trial that there were verbal contracts (i.e. assurances) made by the defendants that the water and water damage repairs would be made by the defendants. Counsel for defendants argued at trial that no such verbal contracts (i.e. assurances) were entered into. Plaintiff's counsel argued at trial that the consideration for such verbal contracts was the plaintiff going to settlement on July 5, 1978. Case law in Virginia is clear that the mere act of going to settlement is not consideration for subsequent contracts where the party is performing an obligation that he is already obligated to perform. In this case the plaintiff had obligated herself to go to settlement since there was no basis for rescission of the contract to purchase the house. Her action, if any, would be in a suit for breach of contract. . . .

. . . .

The court struck the evidence of the plaintiff on motion of counsel for Merrill Lynch as to any verbal contracts (i.e. assurances) that were alleged to have been made between the plaintiff and Merrill Lynch. As a matter of law there was no consideration for these contracts as argued by counsel. Hence there was no issue concerning these verbal contracts to go to the jury. The court did send to the jury the question of whether there was a breach of contract on the sales contract dated May 19, 1978. The jury found a breach of contract and assessed damages at $8,500. However, if you exclude the evidence of damages on the matters struck by the court, it is impossible to arrive at damages of $8,500.

Based on the foregoing, the trial court reduced the verdict to $1,604.00.

At the time the trial court ruled in this case, it did not have the benefit of our decision in *Pierce* v. *Plogger,* 223 Va. 116, 286 S.E.2d 207 (1982). *Pierce* is on all fours with the present case and controls its disposition.

In *Pierce,* Plogger was a builder-developer. Pierce signed a contract to purchase one of Plogger's houses. After the contract was signed, but prior to the scheduled closing, Pierce discovered that there was a leak in the basement and that the air conditioning did not work. Pierce notified the realtor who contacted Plogger. Pierce refused to close until after Plogger had executed a written war-

ranty regarding the leaking basement and the air conditioning, and had given a one-year oral warranty covering unknown defects in the entire house.

Plogger fixed the air conditioning and contracted to have the leak fixed. It is not clear from *Pierce* whether the leak was ever fixed. However, Pierce detected a defect in one of the foundation walls of the house. He had that repaired and paid $3,385.00. Plogger refused to reimburse Pierce. Pierce sued. A jury returned a verdict for Plogger on which judgment was entered. Pierce appealed. We reversed and remanded the case.

In disposing of *Pierce,* we addressed the question whether Pierce's forbearance to sue provided adequate consideration for the oral and written warranties. We held it did and wrote as follows:

> The evidence reveals that, before contracting with Plogger, Pierce inspected the basement during a dry period. After signing the contract, but before closing, he discovered a cracked basement wall and a severe leakage. Plogger agreed, but failed, to correct the defects before closing. *On condition that Plogger give the express oral and written warranties, Pierce agreed to close and not pursue his remedy in rescission. Pierce's agreement to forego suit constitutes valuable consideration for the warranties.*

223 Va. at 120, 286 S.E.2d at 210 (emphasis added). The language italicized above shows that the trial court, in the instant case, was incorrect when it concluded that Veilleux had no cause of action in rescission. In our view, that erroneous conclusion was critical to the trial court's decision that there was a failure of consideration. Had the court been able to review *Pierce* it doubtless would have reached a different conclusion.

Counsel for Merrill Lynch attempts to distinguish *Pierce* on the ground that Pierce stated explicitly that he was bargaining for the oral and written warranties and that he made an express agreement not to pursue a rescission claim. We think that attempted distinction is without merit. In *Pierce,* the language pointed to by Merrill Lynch (which is italicized in the preceding quotation) as being more specific is not attributed to Pierce. Instead, it is this Court's description of what Pierce did. It is our conclusion, in which we describe the legal effect of Pierce's words and actions.

In the fact portion of the opinion all that is recounted is that "Pierce notified the realtor who contacted Plogger. Pierce refused to close until after Plogger had executed a written warranty . . . and . . . had given him a one-year oral warranty." 223 Va. at 118, 286 S.E.2d at 209.

The facts in this appeal do not, in our opinion, differ materially from those in *Pierce*. Veilleux refused to close until she received the oral promise to repair the basement. She did not say the words "I refuse to close until you promise to fix the basement." But her actions establish that refusal. Only after she received the promise did she sign the settlement papers. Prior to that time she made unmistakably clear that because of the leaky basement she did not want the house.

That Veilleux acted in substantially the same manner as did Pierce can be seen from a detailed examination of the facts on the day of the settlement. Veilleux testified that on settlement day, she was present along with the closing attorney and two agents from Long & Foster. She testified that she told them, "I am not buying this house; I do not want a house with a leaky basement." She said that one of the Long & Foster agents told her "[W]ell, now, look, let's be calm about the situation, because you are very lucky, you are dealing with Merrill Lynch. They are going to make this thing right. They know that the basement leaks now, and before they ever sold it to anybody else, they would have to fix it, and I am sure they are going to fix it for you." Veilleux testified on direct examination that after these initial assurances to her, the Long & Foster agents "made these contacts with the Merrill Lynch office and had been assured that the repairs would be made." On cross-examination, Merrill Lynch's counsel read from a deposition of Veilleux where she had testified as follows:

> It was my understanding before I signed the settlement papers that the leak problem would be fixed, that the pool would be in A-1 condition, and that I would not have to worry about anything. That Long & Foster would get the work done and that Merrill Lynch would pay the price.

While still on cross-examination, she testified further as follows:

> [I]f I had not been assured that the conditions on that house would have been put in order, I would have not [sic] signed

the settlement papers. I would have gone, at that point, to get a lawyer who would protect me. . . .

She could hardly have made her position any clearer. We have no doubt that had she not received the oral promise to repair the basement there would have been no settlement and she would have pursued her legal remedies against Merrill Lynch.[1]

When she settled, she forbore to sue. She gave up a valuable right. What we said in *Hooff* v. *Paine,* 172 Va. 481, 2 S.E.2d 313 (1939), applies with equal force here:

The law is well settled that forbearance, or the promise of forbearance, to prosecute a well-founded or doubtful claim is a sufficient consideration for a contract.

172 Va. at 485, 2 S.E.2d at 314. *Pierce* establishes that she could have maintained a claim for rescission. *Pierce* also teaches that whether consideration is adequate is a question of law. In light of these authorities and upon our consideration of the facts we hold, as a matter of law, that there was consideration to support Merrill Lynch's promise to repair Veilleux's basement.

With regard to the claim against Long & Foster, we have reviewed the evidence in the record and we agree with the trial court's conclusion that there was no evidence proving the existence of any contract between Long & Foster and Veilleux for repairs to the property. Therefore, the trial court's dismissal of Long & Foster will be affirmed.

With respect to the claim against Merrill Lynch, the rulings to strike plaintiff's evidence of an oral contract and to reduce the verdict amount will be reversed, the verdict will be reinstated, and judgment will be entered on the reinstated verdict.

*Affirmed in part,*
*reversed in part,*
*and final judgment.*

---

[1] Indeed, in oral argument counsel for Merrill Lynch conceded this point. He stated, "I don't believe that there is any doubt that the reason she settled were [sic] the promises that were made."