# GREENWOOD ASSOCIATES, INC.

## V.

## CRESTAR BANK

Record No. 931296

September 16, 1994

Present: All the Justices

*Robert V. Roussos (Roussos and Langhorne*, on brief), for appellant.

*Stephen E. Noona (Paul K. Campsen; John W. Hamilton; Kaufman & Canoles*, on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

In this controversy between a bank and its customer arising from a foreclosure, we consider whether the trial court correctly sustained the bank's demurrer and dismissed the customer's suit.

In October 1991, appellant Greenwood Associates, Inc., filed suit against Crestar Bank. The trial court sustained Crestar's demurrer to the original bill of complaint and allowed the plaintiff to amend. The plaintiff filed a three-count amended bill, to which Crestar also demurred. The court sustained the second demurrer. We awarded the plaintiff this appeal from a June 1993 order dismissing the suit.

Because a demurrer admits the truth of all material facts that are well pleaded, we shall summarize the plaintiff's allegations as

if they are true, although Crestar "disagrees strongly with and denies the allegations."

In July 1986, the plaintiff obtained a loan from Crestar in the amount of $300,000 secured by a first deed of trust on property in Norfolk owned by the plaintiff that included an apartment building. Crestar subsequently obtained a second deed of trust on the same property in the amount of $45,000. The first deed of trust was "called" by Crestar in April 1990.

Subsequently, the plaintiff "negotiated" with Crestar to prevent a foreclosure on the property and, in June 1990, Crestar agreed to forebear its right to commence foreclosure until September 1, 1990. When "the forbearance period approached expiration," the plaintiff obtained a contract with one David Marshall and a loan commitment from "Essex First Mortgage" to finance the sale of the real estate to Marshall. This sale would have produced proceeds sufficient to retire all Crestar's claims against the plaintiff and would have resulted "in net proceeds" to plaintiff. Crestar commenced to foreclose on the property even though the sale to Marshall was "imminent," and even though Crestar "was fully advised of both the sale contract and the commitment letter" prior to the day of the scheduled foreclosure.

At that time, a representative of Crestar "assured" the plaintiff that if Crestar subsequently sold the property after foreclosure, "Crestar would not 'double profit' if it received more than the amount bidded in," but would credit the plaintiff's "account." The plaintiff was "discouraged by Crestar in obtaining bidders for the foreclosure sale, or taking any other action to protect its interest, by oral assurances by Crestar representatives that the proceeds of any future sale . . . would be credited to the [plaintiff's] account."

In spite of the plaintiff's continued request that the foreclosure sale be postponed "a few days" so plaintiff could close with Marshall, Crestar conducted the sale on October 4, 1990. Crestar was the sole bidder and purchased the property for $345,000. On the next day, Crestar entered into a sales contract with Marshall "for $448,000, the exact same amount which had been contracted for by Mr. Marshall" with the plaintiff. That sale closed on October 31, 1990 "with net proceeds of $389,145.30, plus additional escrows which remained unaccounted for, being paid to Crestar" that Crestar refused to credit to plaintiff.

In the first count of the amended bill, the plaintiff alleges that "the agreement concerning the application of funds of the second sale constituted a contract between the parties," and that "the failure to credit and properly account for the proceeds of sale constituted a breach of contract." The plaintiff alleges that this breach of contract caused it to suffer a loss of $104,000, "minus any reasonable expenses attributable to" the October 4 sale, "said sum being the difference in the amount that was actually credited and the amount which should have been credited."

In the second count, plaintiff seeks an order requiring Crestar to provide plaintiff with an accounting. Several months prior to the foreclosure, Crestar "took over the collection of rents from the subject property." The plaintiff asserts that during this time, when it was the owner of the property, it was "entitled to an accounting of rents received and disbursements," which Crestar has refused to provide.

In the third count, the plaintiff asserts that Crestar's actions "constituted an intentionally misleading course of conduct towards" the plaintiff "insofar as it failed to properly apply the sale proceeds" of the subject property "while assuring" the plaintiff "that it would do so." The plaintiff alleges that this course of conduct constituted "a breach of its covenant of good faith and fair dealing imposed upon it under the Uniform Commercial Code," and seeks damages in the amount of $104,000 for this alleged breach.

On appeal, the plaintiff summarizes its claim under the first count as follows: "Greenwood alleged that an oral promise was made by Crestar. This promise was an assurance by Crestar that it would not double profit on any sale of the Property subsequent to foreclosure and that any surplus from such a sale would be credited to Greenwood's account." Crestar maintains that the alleged contract is unenforceable because its terms are vague and uncertain, it lacks consideration, and it is void under the Statute of Frauds because not in writing.

We will assume, but not decide, that the allegations of the amended bill set forth the terms of the contract with sufficient specificity. Nonetheless, we hold that the alleged oral contract fails for lack of consideration.

The plaintiff correctly notes that a promise to forebear the exercise of a legal right is adequate consideration to support a contract, *Allen* v. *Aetna Casualty & Surety Co.*, 222 Va. 361,

363, 281 S.E.2d 818, 819 (1981), and that an agreement to forebear may be implied from the parties' conduct and the nature of the transaction. *Troyer* v. *Troyer*, 231 Va. 90, 94, 341 S.E.2d 182, 185 (1986). The plaintiff argues that "Greenwood had a number of options available prior to foreclosure which would have protected its interests. Among those options were obtaining other bidders for the Property, seeking an injunction in state court or filing Chapter 11 Bankruptcy to stay the foreclosure proceedings." Further, the plaintiff contends that it is "legally sufficient that Crestar's assurance or promise should have reasonably induced forbearance and that it did, in fact, result in forbearance on the part of Greenwood, the promisee."

■ We do not agree with the plaintiff. Mere forbearance, without an agreement to that effect, is not sufficient consideration for a promise, even though the fact of forbearance was induced by the promise. *Saunders* v. *Bank of Mecklenberg*, 112 Va. 443, 453-54, 71 S.E. 714, 717 (1911), *cited in Troyer*, 231 Va. at 94, 341 S.E.2d at 185. The fact of forbearance to act does not establish consideration for the undertaking, unless there was an agreement, express or implied, that the plaintiff would forebear to act. "Such an agreement is absolutely essential." *Saunders*, 112 Va. at 454, 71 S.E. at 717.

■ In the present case, nowhere has the plaintiff alleged that Crestar made the alleged "assurances" not to "double profit" on the resale of the property in exchange for the plaintiff's promise to forebear from exercising legal rights. The plaintiff merely has alleged that Crestar made "assurances" that it foreseeably relied upon to its detriment. The "absolutely essential" agreement is lacking in the plaintiff's allegations. Thus, the plaintiff has failed to state a cause of action for breach of contract to support its claim for damages under the first count of the amended bill. Because an enforceable contract has not been pled, we do not reach the Statute of Frauds question.

■ Proceeding to the second count, we hold that the plaintiff's allegations support entitlement to the accounting that it requests in the amended bill, that is, an accounting of all funds Crestar received and disbursed from rents collected during the period prior to foreclosure. Based on the allegations, Crestar was acting in a fiduciary capacity during that period and was under a duty to account to the property owner. *See* Code § 8.01-31 ("An accounting in equity may be had against any fiduciary . . . for receiving

more than comes to his just share or proportion. . .”). Therefore, the trial court erred in sustaining the demurrer to the second count of the amended bill.

■ Turning to the third count, we conclude that this transaction is not controlled by the Uniform Commercial Code (U.C.C.). The alleged oral contract involves the foreclosure, sale, and resale of real property as a precondition to its performance. The U.C.C. expressly excludes the transfer of realty from its provisions. Code § 8.9-104 specifies: “This title does not apply . . . to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder. . . .” Thus, the plaintiff has failed to state a claim against Crestar based upon any cause of action that may exist for breach of the “obligation of good faith” set forth in Code § 8.1-203. *See* Code § 8.1-201(19).

Consequently, that portion of the trial court's judgment dismissing the first and third counts of the amended bill will be affirmed. The portion dismissing the second count will be reversed and the cause will be remanded for further proceedings under that count of the amended bill of complaint.

*Affirmed in part,*
*reversed in part,*
*and remanded.*