**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 16-1676**

THOMAS W. RUSNACK,

    Debtor - Appellant,

  v.

CARDINAL BANK, N.A.,

    Creditor - Appellee,

  and

TIMOTHY P. BRANIGAN,

    Trustee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. J. Frederick Motz, Senior District Judge.  (8:15-cv-02951-JFM; 14-21283)

Argued:  May 11, 2017            Decided:  July 25, 2017

Before AGEE, KEENAN, and HARRIS, Circuit Judges.

Reversed by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Agee and Judge Keenan joined.

Douglas Neil Gottron, MORRIS PALERM, LLC, Rockville, Maryland, for Appellant. Erica Tiffany Davis, AXELSON, WILLIAMOWSKY, BENDER & FISHMAN, P.C., Rockville, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Thomas Rusnack and Cardinal Bank disagree over the balance due on a home equity loan. The Bank claims that Rusnack owes approximately $70,000. But Rusnack insists that he owes at least $20,000 less, because the Bank, despite his instructions to the contrary, honored two $10,000 checks made out to his ex-wife and signed only by her.

After the Bank tried to collect on the loan, Rusnack initiated bankruptcy proceedings. The bankruptcy court sided with Rusnack, holding that the Bank improperly honored the checks and that because Rusnack did not benefit from the $20,000, the Bank would have to bear the cost of its error. The district court reversed and ruled for the Bank. According to the district court, the bankruptcy court clearly erred in finding that Rusnack did not benefit from the $20,000 in checks cashed by his ex-wife. Moreover, the district court held, Rusnack's objection was barred by a Virginia five-year statute of limitations for contract actions, raised by the Bank for the first time in the district court proceedings.

We cannot agree with the district court. In our view, the bankruptcy court's finding that Rusnack did not benefit from the Bank's mistake cannot be deemed clearly erroneous. Nor does Virginia's limitation period for contract actions bar Rusnack's objection in bankruptcy, both because the Bank failed to raise it before the bankruptcy court and because Rusnack is not bringing a contract action. Accordingly, we reverse.

## I.

### A.

Thomas Rusnack and his then-wife, Analisa Rusnack, opened a home equity line of credit (HELOC) with Cardinal Bank in August 2003. Between 2003 and 2006, the Rusnacks periodically drew on the HELOC using checks issued by Cardinal Bank. In March 2006, Rusnack and his wife separated. On June 22, 2006, Rusnack wrote a letter to Cardinal Bank directing the Bank to "freeze my loan . . . from further advances." J.A. 321. The Bank acknowledged Rusnack's request the same day in a letter addressed to the Rusnacks. The letter, written by loan services manager Barbara Hudson, informed the Rusnacks that the Bank had "placed a freeze on the above loan that will stop all future withdrawals from this account. If you need us to honor an item or release the freeze, both of your signatures will be required." J.A. 322.

Although the Bank received and confirmed Rusnack's request, the Bank failed to honor it. Even after the separation and the June 22 correspondence, Rusnack's then-wife withdrew money against the HELOC without Rusnack's signature on two occasions. On July 26, 2006, Ms. Rusnack wrote a check for $10,000 made out to herself. The Bank honored the check. According to Rusnack, he called the Bank to complain after this first check cleared, and was told that "the account was blocked; that the money would be placed back into my account and that no other checks could be written on it[.]" J.A. 31. But on September 12, 2006, the Bank once again honored a $10,000 check made out to and signed only by Ms. Rusnack. The two withdrawals increased the principal balance on the HELOC to $70,000.

4

After Ms. Rusnack's second withdrawal, the Bank's senior vice president wrote Ms. Rusnack a letter stating that "according to our records these two checks were inconsistent with the prior notification that no further withdraws were to occur on the account." J.A. 323. The letter instructed Ms. Rusnack: "You may forward repayment of these withdraws or any other amounts outstanding on your home equity account to Cardinal Bank[.]" *Id.* Ms. Rusnack did not repay the $20,000, and the Bank continued to charge Rusnack interest on the full principal balance until the loan matured in 2013. During that time, Rusnack made timely interest payments, including on the disputed $20,000. The Rusnacks finalized their divorce in February of 2008.

### B.

When the HELOC matured on August 4, 2013, Rusnack did not pay off the principal amount the Bank claimed it was owed. The Bank filed a foreclosure action in the Circuit Court for Montgomery County in February of 2014. Around the time the Bank filed the foreclosure action, Rusnack started filing complaints with various consumer protection agencies regarding the $20,000 the Bank had distributed to his ex-wife. In July of 2014, after the state court judge ordered that the foreclosure sale proceed, Rusnack filed a voluntary Chapter 13 bankruptcy petition listing a disputed $50,674 debt to Cardinal Bank. Rusnack's Chapter 13 filing halted the foreclosure proceeding.

In response to Rusnack's filing, the Bank filed a proof of claim asserting that Rusnack owed $70,804 on the HELOC, rather than the $50,674 listed by Rusnack. Rusnack then filed an objection to the Bank's proof of claim, arguing that he should not

5

be responsible for the $20,000 in checks honored by the Bank without his permission, or for the subsequent interest payments on the $20,000.

The bankruptcy court held a hearing on the disputed debt. At the hearing, a senior credit officer for Cardinal Bank testified that the Bank's decision to honor the checks "was an error on the part of the bank, in fact." J.A. 72. The hearing also revealed a disagreement between Mr. and Ms. Rusnack over how the $20,000 was spent. Mr. Rusnack testified that he received no benefit from the $20,000. Ms. Rusnack, on the other hand, surmised that the money was used to pay joint debts, given that she was handling marital finances at the time. But in light of the passage of time and the absence of any records, she acknowledged, she was "assuming" joint use of the funds. J.A. 50.

The bankruptcy court agreed with Mr. Rusnack, sustaining his objection to the Bank's proof of claim. Applying Virginia law,[1] the court held that the withdrawals were unauthorized because they lacked the second signature required during the freeze period. The court also found that Rusnack was not barred from recovery on the ground that he had benefitted from the $20,000. The court credited Rusnack's testimony that he had received no benefit from his estranged wife's withdrawals, deeming it "specific and credible"; by contrast, it declined to give "persuasive weight to Ms. Rusnack's testimony that she assumes she deposited the money into their joint account and assumes she paid joint bills with it." J.A. 231.

---

[1] The HELOC agreement specifies that it is "governed by the laws of Virginia," J.A. 348, and neither party disputes the application of Virginia law to this case.

The Bank appealed, and the parties jointly filed for a stay of the bankruptcy proceedings pending appeal. The district court reversed the bankruptcy court, holding that the Bank was entitled to the full amount claimed. The district court noted that the bankruptcy court had relied on an outdated section of the Virginia Code in finding the withdrawals unauthorized, but agreed that "[u]nquestionably, the honoring of these checks was in error." J.A. 360. Nevertheless, the district court ruled for the Bank on two separate grounds. First, it held that the bankruptcy court's finding that Rusnack did not benefit from the $20,000 was clearly erroneous – and under Virginia law, an account holder who benefits from a bank's mistake may not recover against the bank. Second, and in response to an argument that the Bank did not raise before the bankruptcy court, the district court held that Rusnack's objection was time-barred under Virginia's five-year statute of limitations for breach of contract actions, and that Rusnack could not rely on the equitable doctrine of recoupment to avoid that limitations period. Rusnack timely appealed.

## II.

## A.

We review the judgment of the district court de novo, applying the same standard of review to the bankruptcy court's judgment as the district court did. *Jacksonville Airport, Inc. v. Michkeldel, Inc.*, 434 F.3d 729, 731 (4th Cir. 2006). We thus review the bankruptcy court's findings of fact for clear error, and its legal conclusions de novo. *Id.*

## B.

7

Rusnack's appeal raises two questions. The first is whether Rusnack is correct that he need not pay the Bank for the $20,000 it mistakenly distributed to his ex-wife despite his instructions; the second, whether Rusnack's objection, even if meritorious, is nevertheless time-barred. We address each question in turn, resolving both in Rusnack's favor.

**1.**

The Bank's first argument for why Rusnack should be required to repay the $20,000 distributed to Ms. Rusnack is that Rusnack never effectively instructed the Bank not to honor the two $10,000 checks in question. We may put to one side whether that position can be reconciled with the Bank's concession before the bankruptcy court that its decision to honor the checks was in error. Like the district court, we think it is clear that the Bank improperly allowed the two charges to the HELOC account in contravention of Rusnack's instructions.

Under Virginia law, bank account holders have the right to "stop payment of any item drawn on the customer's account or close the account by an order to the bank describing the item or account with reasonable certainty received at a time and in a manner that affords the bank a reasonable opportunity to act on it[.]" Va. Code Ann. § 8.4-403(a). Rusnack's June 22, 2006 letter to the Bank, instructing it to "freeze my loan . . . from further advances," satisfies the Virginia Code's requirements for stop payment orders.

Although Rusnack's stop payment order was not especially detailed, the Bank's response to the order shows that it was sufficiently clear. The Bank replied the same day,

8

informing the Rusnacks that the Bank had "placed a freeze on the above loan that will stop all future withdrawals from this account. If you need us to honor an item or release the freeze, both of your signatures will be required." J.A. 322. As required by § 8.4-403, the Bank was able to identify the type of payment to be stopped – here, checks signed by only one account holder – with reasonable certainty. And the Bank's immediate response demonstrates that Rusnack delivered his order "in a manner that afford[ed] the bank a reasonable opportunity to act." *See* Va. Code Ann. § 8.4-403(a). Indeed, the Bank confirmed receipt of Rusnack's order over a month before it mistakenly honored Ms. Rusnack's first $10,000 withdrawal.

The Bank argues that Rusnack's instruction to "freeze" his account cannot qualify as a stop payment order because the word "freeze" does not appear in § 8.4-403. We disagree. It is true that § 8.4-403 does not include the word "freeze." But neither does § 8.4-403 require that an account holder use language mirroring its own. Instead, it takes a functional approach, requiring an authorized account holder to submit an order describing the item or account to be stopped with enough certainty and enough lead-time to allow the bank to respond. Rusnack satisfied that requirement, and the particular language he used to do so is beside the point.[2]

---

[2] The bankruptcy court held that the Bank should not have honored the checks under Virginia Code § 8.3A-403, which deems "unauthorized" checks requiring the signature of two or more persons but signed only by one. J.A. 231. As the Bank argues, and as the district court noted, § 8.3A-403 was amended in 2003 and no longer governs. We review the bankruptcy court's legal conclusions de novo, and now apply the correct code provision, Virginia Code § 8.4-403, which Rusnack relied on in his bankruptcy court filings.

Where we differ with the district court is on the Bank's alternative argument: that even if Rusnack effectively stopped payment on the account, the Bank is entitled to recover the $20,000 from him because he benefitted from the checks. Virginia law ensures that account holders like Rusnack will not profit from a bank's failure to abide by a stop payment order, allowing a bank that mistakenly honors a check to "recover the amount of the draft from the person to whom or for whose benefit payment was made[.]" Va. Code Ann. § 8.3A-418(a). Reversing the bankruptcy court's contrary finding as "clearly erroneous," the district court determined that Rusnack benefitted from the $20,000 withdrawn by Ms. Rusnack, so that he was required to repay the Bank. J.A. 361. We cannot agree.

The "clearly-erroneous standard of review is a deferential one." *Amadeo v. Zant*, 486 U.S. 214, 223 (1988). If the assessment of the evidence reached by the fact-finder – here, the bankruptcy court – is "plausible in light of the record viewed in its entirety," then the reviewing court – here, the district court – "may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* (internal quotation marks omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985). And it is up to the fact-finder, who may assess the demeanor of the witnesses before him or her, to make judgments about witness credibility. *See SG Homes Assocs., LP v. Marinucci*, 718 F.3d 327, 338 (4th Cir. 2013) ("[A]ssessing the weight of evidence and the credibility of witnesses is within the sole province of the fact-finder[.]" (internal quotation marks omitted)).

10

Here, Rusnack and his ex-wife offered conflicting testimony about whether Rusnack benefitted from the $20,000 at issue. Ms. Rusnack stated that at the time the checks were written (after the couple's separation but before the divorce) she handled the "marital finances," and so she "imagine[d]" that what she did was "take the money and deposit it into our joint accounts" for payment of joint bills. J.A. 47. On cross-examination, she acknowledged that "[i]t was a long time ago, 2006. We were still settling finances. I'm assuming that's what it went to. I do not have detailed records." J.A. 50. In contrast, Rusnack testified that he was "not aware of where [the checks] were deposited," J.A. 33, and stated categorically that he "received no benefit from them," J.A. 30. After hearing and carefully considering the live testimony of these two witnesses, the bankruptcy court did what fact-finders do: It made a credibility judgment, deeming Rusnack's testimony "credible," J.A. 231, and it made a choice between "two permissible views of the evidence," *see Anderson*, 470 U.S. at 574, adopting Rusnack's "specific" testimony that he received no benefit from the checks over Ms. Rusnack's testimony about how she "assume[d]" the funds were used, J.A. 231.

The district court disagreed with the bankruptcy court's evaluation of the evidence. But that is not grounds for reversing under the clearly erroneous standard. To be sure, the Rusnacks presented inconsistent testimony. The transcript reveals that Mr. Rusnack's testimony was brief but unequivocal, while Ms. Rusnack was slightly more detailed but less certain. And another finder of fact reasonably might have resolved the conflict differently. But it was for the bankruptcy court, as the finder of fact here, to make the credibility determinations necessary to resolve the inconsistency in the

11

testimony, and to assess the relative probative value of the Rusnacks' statements. *See, e.g.*, *SG Homes*, 718 F.3d at 338; *In re Schoenfield*, 608 F.2d 930, 935 (2d Cir. 1979) (fact-finder owed deference because transcripts alone "cannot capture the sweaty brow, the shifty eye, [or] the quavering voice").

Under the clearly erroneous standard, there is no ground for disturbing the bankruptcy court's "plausible" finding, *see Amadeo*, 486 U.S. at 223, that Rusnack did not benefit from the Bank's two mistaken $10,000 distributions. And because Rusnack did not benefit from distributions made in contravention of his stop payment order, the Bank may not recover the $20,000 from him. *See* Va. Code Ann. § 8.3A-418.

## 2.

We now turn to the Bank's argument that Rusnack's objection is time-barred. The Bank argued to the bankruptcy court that Rusnack's objection was barred both by Virginia Code § 8.4-406, which establishes a one-year "discover and report" period within which an account holder must notify a bank of an unauthorized charge, and also by a notice provision of the HELOC itself, requiring written notification to the Bank. The Bank also claimed that Rusnack's objection was barred by the doctrines of waiver and laches.

The bankruptcy court disagreed. It held, first, that because Rusnack called the Bank soon after he discovered the first $10,000 withdrawal, he satisfied the one-year "discover and report" requirement of § 8.4-406. And the HELOC provision requiring notice in writing, the bankruptcy court concluded, was no more than notice of a debtor's rights under the Fair Credit Billing Act, 15 U.S.C. § 1666, with no effect on Rusnack's

12

ability to pursue defenses arising outside that Act. Finally, the bankruptcy court rejected what was then the Bank's waiver argument, holding that in light of Rusnack's prompt report of the improper charges against his account, Rusnack had not "ratified the unauthorized charges" by making a subsequent joint withdrawal, co-signed by Ms. Rusnack, from the account. J.A. 234 n.1.

On appeal to the district court, the Bank expanded its argument, and for the first time claimed that Rusnack's objection also was barred by Virginia's five-year statute of limitations on breach of contract actions, § 8.01-246(2) of the Virginia Code. In response, Rusnack argued that his objection was not time-barred because it was in the nature of a recoupment claim, excusing what otherwise might be a statute of limitations violation. The district court agreed with the Bank, holding that Rusnack's objection to the Bank's proof of claim was time-barred by Virginia's limitation period in contract actions, and that the equitable doctrine of recoupment did not apply.[3]

The district court erred in applying Virginia's five-year statute of limitations for breach of contract actions to bar Rusnack's objection. We regularly decline to hear

---

[3] The district court did not reach the Bank's alternative argument regarding the HELOC's written notice provision. We agree with the bankruptcy court that the relevant provision, by terms, is limited to identifying a debtor's "rights and [a bank's] responsibilities under the Fair Credit Billing Act," J.A. 235 n.2 (quoting HELOC agreement) (internal quotation marks omitted), and that neither the HELOC provision nor the Act makes the Act "the account holder's exclusive remedy when faced with incorrect charges," J.A. 236. Even if Rusnack did not provide the written notice necessary to avail himself of the Fair Credit Billing Act's consumer protections, in other words, that failure would not now preclude him from objecting to the Bank's proof of claim in a bankruptcy proceeding.

13

claims litigants raise for the first time on appeal. *See, e.g.*, *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d 231, 239 (4th Cir. 1999). We do so to "encourage parties to resolve disputes at trial," and so that district courts will not "serve merely as way stations en route to the court of appeals." *Matter of Weber*, 25 F.3d 413, 416 (7th Cir. 1994). The same rationale applies with equal force to arguments not raised before the bankruptcy court, *id.* – like the Bank's claim under § 8.01-246(2), which it discovered only on appeal before the district court. For that reason alone, the district court should not have relied on § 8.01-246(2) to bar Rusnack's objection.

It is perhaps not surprising that the Bank did not light on § 8.01-246 sooner, because it is not clear why a limitations period for breach of contract actions would apply here in any event. Rusnack's objection to the Bank's proof of claim, raised in the context of a bankruptcy proceeding, does not allege that the Bank breached the HELOC agreement. Rather, Rusnack argues only that the Bank's distributions to Ms. Rusnack violated various provisions of the Virginia Code. And the Bank has not explained why a statute of limitations for breach of contract actions should govern a bankruptcy objection that does not assert a breach of contract. Nor has the Bank explained why a claim objection, which may not be used to seek affirmative relief, *see* Fed. R. Bankr. P. 3007(b), would be subject to a limitations period for a breach of contract suit. To be sure, bankruptcy courts have applied § 8.01-246 to bar *claims* filed in bankruptcy proceedings. *See, e.g.*, *In re Haskins*, 563 B.R. 177, 191 (Bankr. W.D. Va. 2017). But the parties have

14

not alerted us to, nor have we found, an instance of a bankruptcy court overruling a debtor's claim *objection* on the ground that it is outside a limitations period.

Finally, even if we assumed that the five-year limitations period for contract actions applied in this case, the Bank's argument that Rusnack's objection is time-barred still would fail because Rusnack's objection is covered by the equitable doctrine of recoupment. Recoupment "is the right of the defendant" – here, Rusnack – "to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to the plaintiff's claim." *First Nat'l Bank of Louisville v. Master Auto Serv. Corp.*, 693 F.2d 308, 310 n.1 (4th Cir. 1982). Recoupment claims may only be used to "diminish plaintiff's recovery," and may not be "the basis for affirmative relief." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1401 (3d ed. 1998). Importantly, a recoupment defense "is never barred by the statute of limitations so long as the main action itself is timely." *Bull v. United States*, 295 U.S. 247, 262 (1935).

The Bank argues that Rusnack cannot rely on the doctrine of recoupment because his objection and the Bank's claim do not "arise from a single contract or transaction." Br. of Appellee at 19 (quoting *Matter of Kosadnar*, 157 F.3d 1011, 1014 (5th Cir. 1998)) (emphasis removed). According to the Bank, the parties' claims arise out of two separate contracts: the 2003 HELOC agreement and Rusnack's 2006 freeze letter. The Bank claims that accepting Rusnack's request to freeze the account created "new obligations and duties" not included in the HELOC, thereby creating a separate contract. *Id.* at 20. We disagree. Contracts must be supported by consideration, *see Greenwood Assocs., Inc.*

15

*v. Crestar Bank*, 448 S.E.2d 399, 402 (Va. 1994), and a promise to perform a pre-existing legal duty is not adequate consideration to form a contract, *see* 3 Williston on Contracts § 7:42 (4th ed.) ("If a promisee is already bound by official duty to render a service, it undergoes no detriment . . . beyond what the law requires it to suffer or to give, for it to perform . . . the service[.]"). Here, the Bank had a pre-existing legal duty, under Virginia Code § 8.4-403, to honor Rusnack's valid stop payment order. Rusnack's instruction to stop payment and the Bank's agreement to do so did not form a new contract.

The HELOC agreement was, and remains, the only contract between the parties, and both the Bank's claim and Rusnack's objection arise from it. Rusnack's objection is an exercise of his "right . . . to have [the Bank's] monetary claim reduced" because of a claim against the Bank "arising out of the very [same] contract." *First Nat'l Bank of Louisville,* 693 F.2d at 310 n.1. And Rusnack's objection does not include a request for affirmative relief. Rather, he seeks to diminish the Bank's recovery by $20,000 plus interest. Because Rusnack satisfies the requirements to invoke a recoupment defense, his objection to the Bank's proof of claim would not be time-barred even if the limitations period of § 8.01-246 otherwise applied.

That leaves us with the Bank's alternative argument that even if Rusnack's objection is not barred by a statute of limitations, it is precluded by the doctrines of waiver and laches. The district court did not address this contention, and the Bank declined to press it at oral argument, instead acknowledging that it cannot sustain a claim for waiver or laches if Rusnack's objection comes within the equitable doctrine of recoupment. In any event, we note that the Bank's primary waiver argument – that

16

Rusnack ratified the challenged withdrawals by making timely interest payments on the $20,000 during the term of the HELOC – was not presented to the bankruptcy court. And while the related doctrine of laches may bar recovery if a claimant fails to "assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party," *Princess Anne Hills Civic League, Inc. v. Susan Constant Real Estate Tr.*, 413 S.E.2d 599, 602 (Va. 1992), as the bankruptcy court held, Rusnack timely reported the Bank's error, and the Bank has offered only conjecture to suggest that any delay was prejudicial.

In sum, we find no ground for holding that Rusnack's objection to the Bank's proof of claim is time-barred. And because Rusnack's objection otherwise is meritorious, the bankruptcy court properly sustained the objection.

## III.

For the foregoing reasons, the judgment of the district court is reversed.

*REVERSED*